UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CHERYL A.,[1]

                                            Plaintiff,              Case # 19-CV-1438-FPG

v.                                                                                   DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                           Defendant.

**INTRODUCTION**

Plaintiff Cheryl A. brings this action pursuant to the Social Security Act, seeking review of the decision of the Commissioner of Social Security that found that she was no longer eligible for Supplemental Security Income ("SSI") benefits under Title XVI of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3). Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 10, 12. For the reasons that follow, the Commissioner's motion is GRANTED, Plaintiff's motion is DENIED, and the complaint is DISMISSED WITH PREJUDICE.

**BACKGROUND**

In January 2005, Plaintiff began receiving SSI benefits due to her major depressive disorder. Tr.[2] 73. In 2015, the Social Security Administration ("the SSA") conducted a periodic review of Plaintiff's eligibility and determined that she was no longer disabled. Tr. 71, 73. Plaintiff challenged this determination through the administrative process. On May 15, 2018, Administrative Law Judge William M. Weir (the "ALJ") issued an unfavorable decision, finding

---

[1] Under this District's Standing Order, any non-government party must be referenced solely by first name and last initial.

[2] "Tr." refers to the administrative record in this matter. ECF No. 6.

1

that Plaintiff was no longer disabled as of December 4, 2015. Tr. 17-27. The Appeals Council denied review in August 2019. Tr. 1-4. Plaintiff has now filed this action for review of the Commissioner's decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

### II. Disability Determination

The SSA is required to periodically review a recipient's entitlement to SSI benefits. 20 C.F.R. § 416.994(a). "In implementing that directive, the Commissioner applies a multi-step sequential evaluation to determine whether an individual, once disabled, remains disabled under the Act." *Bahaga v. Comm'r of Soc. Sec.*, No. 19-CV-5014, 2020 WL 5755020, at *3 (S.D.N.Y. July 2, 2020). The regulations lay out seven steps:

> At the first step, the ALJ decides whether the claimant currently has an impairment or combination of impairments which meets or medically equals the criteria of an impairment in the Listings. If the impairment does not equal a listed impairment, the second step addresses whether there has been medical improvement in claimant's condition. If there has been medical improvement, at the third step, a determination is made whether such improvement is related to the claimant's ability to perform work – that is, whether there has been an increase in the individual's residual functional capacity ("RFC").
>
> If it is determined there has been no medical improvement, or the medical improvement is not related to the claimant's ability to work, then, as a fourth step, consideration is given to whether the case meets any of the special exceptions to medical improvement for determining that disability has ceased. If, however, the medical improvement is related to the claimant's ability to work, the Commissioner goes to the fifth step and inquires whether all of the claimant's current impairments in combination are severe – that is, whether they impose more than a minimal limitation on her physical or mental ability to perform basic work activities.
>
> At the sixth step, if the claimant's current impairments are severe, the ALJ must determine whether the claimant can perform her past relevant work. If not, or if there is no past relevant work, at the seventh step, the ALJ considers whether other work exists that the claimant can perform, given her RFC, age, education, and past work experience. If the claimant can perform other work, she is no longer disabled.

*Id.* at *3-4 (internal citations omitted); *see generally* 20 C.F.R. § 416.994.

## DISCUSSION

### I.  The ALJ's Decision

The ALJ analyzed Plaintiff's claim for benefits under the process described above. At step one, the ALJ found that does not have any impairments that meet or medically equal a Listings impairment. Tr. 19. At step two, the ALJ found that Plaintiff had medically improved as of December 4, 2015. *Id.* At step three, the ALJ concluded that Plaintiff's medical improvement was related to her ability to work. Tr. 21. Given these determinations, the ALJ skipped step four and concluded, at step five, that Plaintiff no longer has a severe impairment or combination of impairments. *Id.* As a result of this determination, the ALJ found that Plaintiff was no longer disabled as of December 4, 2015. Tr. 27; *see* 20 C.F.R. § 416.994(b)(5)(v).

## II. Analysis

Plaintiff argues that remand is warranted because the ALJ (1) failed to explain the weight he gave to portions of the opinion of consultative psychologist, Gregory Fabiano, Ph.D.; (2) failed to evaluate the opinion of treating physician's assistant Corry Wierzbowski; and (3) failed to recontact treating physician Ronald Palazzo, M.D., to clarify his illegible treatment notes. *See generally* ECF No. 10-1. The Court concludes that none of these arguments warrants remand.

### a. Dr. Fabiano's Opinion

Plaintiff notes that the ALJ purported to give "great weight" to the opinion of Dr. Fabiano. *See* Tr. 26, 435-39. Dr. Fabiano diagnosed Plaintiff with attention deficit hyperactivity disorder, major depressive disorder, and anxiety disorder, and opined, among other things, that she would have "moderate limitations in her ability to maintain attention and concentration and appropriately deal with stress." Tr. 438. Plaintiff argues that the ALJ's non-severity finding is inconsistent with Dr. Fabiano's conclusion that she was moderately limited in some respects, such that the ALJ was required to explain and justify the discrepancy. In her view, because the ALJ did not explain the discrepancy, remand is warranted.

The Court disagrees. While an ALJ's discussion must be sufficiently articulated to allow for "meaningful judicial review," *Muhammad v. Comm'r of Soc. Sec.*, No. 18-CV-6041, 2019 WL 2295402, at *3 (W.D.N.Y. May 30, 2019), "an ALJ's failure to fully express her reasoning does not justify remand so long as the Court can glean the rationale of the decision." *Golibersuch v. Comm'r of Soc. Sec.*, No. 18-CV-976, 2020 WL 409991, at *4 (W.D.N.Y. Jan. 24, 2020). Here, it is evident both that the ALJ did not accept Dr. Fabiano's moderate limitations and why he did not accept them.

In his decision, the ALJ summarized Dr. Fabiano's opinion and explicitly noted the moderate limitations that Dr. Fabiano identified. Tr. 20. Later in the decision, in discussing the weight he afforded to the opinion, the ALJ stated that he gave "great weight to the above opinion of Dr. Fabiano, *wherein he opined that* the claimant's psychiatric problems were not significant enough to interfere with her ability to function on a daily basis." Tr. 26 (emphasis added). The Court understands that phrasing to mean that the ALJ agreed with Dr. Fabiano *to the extent* that Dr. Fabiano opined that Plaintiff's impairments did not inhibit her in her daily activities. Perhaps it would have been more precise to say that Dr. Fabiano's opinion was afforded partial weight, but the Court need not demand such formal niceties where the ALJ's substantive reasoning is apparent. *Cf. Poole v. Saul*, 462 F. Supp. 3d 137, 152 n.6 (D. Conn. 2020) (ALJ's failure to assign specific weight to opinion harmless because the Court was "able to glean that the ALJ assigned limited weight to that opinion"). Thus, the Court is able to glean that the ALJ rejected Dr. Fabiano's moderate limitations.

Furthermore, the Court is able to glean why the ALJ rejected those limitations. The ALJ described in detail how Plaintiff admittedly lied under oath and to medical providers about her recent work history. *See* Tr. 25-26; *see, e.g.*, Tr. 719 (admitting that she "lied to the [doctor] about not working" and stating that she is "so worried that she is going to get denied SSI anyday [sic] now"). After reviewing that evidence, the ALJ found that Plaintiff "posited stories in her medical record for confessed secondary gain," which made "the totality of her impairments suspect" and left "all diagnoses and findings of clinical limitations . . . subject to significant skepticism." Tr. 26.

Plaintiff's admitted untrustworthiness bore on the persuasive value of Dr. Fabiano's opinion, as it appears that Dr. Fabiano relied on Plaintiff's subjective reports to find the moderate

5

limitations.  At the examination, Plaintiff reported difficulties with attention and stress—*e.g.*, she believed she had "ADD" during school, she had not worked in five years, she felt constant fatigue, and she had anxiety and social withdrawal.  *See* Tr. 435-36.  But during the mental status examination, Plaintiff had a euthymic mood, adequate presentation, intact attention and concentration, and mildly impaired memory skills "perhaps due to some distractibility." Tr. 437.  Despite these objective findings, Dr. Fabiano still identified moderate limitations in attention, concentration, and stress.  Tr. 438.  Under these circumstances, the ALJ could reasonably reject those limitations premised on Plaintiff's subjective reports.  *See Davis v. Comm'r of Soc. Sec.*, No. 16-CV-1074, 2017 WL 7049560, at *5 (N.D.N.Y. Nov. 20, 2017) ("[A]n ALJ may provide less weight to a doctor's opinion if it was based largely upon the subjective statements of a plaintiff, who the ALJ had reasonably [found to] be less than fully credible.").  Indeed, this was one of the central reasons that the ALJ afforded less weight to another medical opinion in the record, *see* Tr. 26, and it is reasonable to read the decision to have applied that same logic to Dr. Fabiano's more extreme limitations.

Importantly, in her briefing, Plaintiff does not dispute the ALJ's findings on her credibility. *See generally* ECF No. 10-1; ECF No. 13.  Accordingly, because the Court can sufficiently discern the ALJ's rationale for his treatment of Dr. Fabiano's moderate limitations, and because Plaintiff does not otherwise challenge that rationale, this argument does not justify remand.

b. **Wierzbowski's Opinion**

Plaintiff next argues that the ALJ erred by failing to discuss the medical evaluation complete by Wierzbowski.  *See* ECF No. 10-1 at 15-18.  Having reviewed Wierzbowski's opinion, the Court finds any such error harmless.

"[The] failure to consider or weigh an opinion may be considered harmless error where consideration of that opinion would not have changed the outcome." *Fiducia v. Comm'r of Soc. Sec.*, No. 16-CV-1317, 2017 WL 4513405, at *4 (N.D.N.Y. Oct. 10, 2017) (collecting cases). Here, the ALJ found that Plaintiff's subjective reports were not reliable indicators of her functioning, and he explicitly rejected the opinion of Plaintiff's social worker because it was reliant on such reports. *See* Tr. 26. Wierzbowski's opinion suffers from the same defect: the evaluation was completed after one office visit, and there is no indication that Wierzbowski obtained any clinical findings or reviewed any medical records before assessing Plaintiff's functioning. *See* Tr. 526-29. In other words, Wierzbowski appears to have relied on Plaintiff's subjective reports to complete the evaluation. *See id.* Thus, whether the ALJ overlooked the opinion or simply failed to discuss it, given the ALJ's explicit findings with respect to Plaintiff's subjective reports, there is "no reasonable likelihood" that further consideration of this opinion "would have changed the ALJ's determination." *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010); *see also Delossantos v. Comm'r of Soc. Sec.*, No. 16-CV-713, 2017 WL 4011265, at *7 n.3 (N.D.N.Y. Sept. 11, 2017) (failure to discuss therapist's opinion harmless where opinion was reliant on "Plaintiff's [untrustworthy] self-reports" and therefore "would have been rejected for precisely the same reasons the ALJ rejected [the treating physician's] opinion").

### c. Dr. Palazzo's Treatment Notes

Plaintiff met with Dr. Palazzo for treatment on a number of occasions between January 2016 and October 2017   *See* ECF No. 10-1 at 7; *see also* Tr. 556-60, 569-71. In his decision, the ALJ did not review treatment records from Dr. Palazzo, stating that they "were not legible." Tr. 24. Although both sides attempt to decode some of the notes in their briefing, *see* ECF No. 10-1 at 7; ECF No. 12-1 at 15, the Court agrees with the ALJ that, by and large, Dr. Palazzo's notes are

7

illegible. Plaintiff argues that, under these circumstances, the ALJ was obligated to recontact Dr. Palazzo to obtain clarification about the records. ECF No. 10-1 at 18-20. Because he failed to do so, remand is warranted.

The Court is not persuaded. "An ALJ is not obliged to recontact a treating physician where the record is sufficiently complete to allow him to assess a claim of disability." *Pazik v. Comm'r of Soc. Sec.*, No. 19-CV-943, 2020 WL 5511306, at *6 (W.D.N.Y. Sept. 14, 2020) (rejecting argument that ALJ was required to recontact treating physician because physician's "handwritten notes were illegible"); *see also* 20 C.F.R. § 416.920b(b)(1) (noting that if evidence in case record is ambiguous, the SSA will "consider the relevant evidence and see if we can determine whether you are disabled based on the evidence we have"). To be sure, there are circumstances in which treatment notes are so material to a case that clarification may be necessary, *see, e.g.*, *Minnifield v. Berryhill*, No. 17-CV-1196, 2018 WL 4380979, at *7 (D. Conn. Sept. 14, 2018) (collecting cases), but it will depend on the relevance of the ambiguous evidence in the context of the rest of the record. *See David G. v. Comm'r of Soc. Sec.*, No. 19-CV-895, 2021 WL 821832, at *2 (W.D.N.Y. Mar. 4, 2021) ("[W]here there are no obvious gaps in the record and a complete medical history exists, the ALJ is not obligated to seek additional evidence." (internal quotation marks omitted)).

Here, while Plaintiff argues that the ALJ should have recontacted Dr. Palazzo, she fails to articulate why the absence of his notes created a gap in the record. The administrative record is over 700 pages and includes nearly two dozen medical exhibits related to her physical and mental impairments. Plaintiff does not explain who Dr. Palazzo is, why he treated Plaintiff, and what course of treatment he prescribed,[3] leaving the Court unable to conclude that the absence of his

---

[3] Of course, the notes themselves are illegible, so the Court cannot expect Plaintiff to divine their specific meaning; but basic information concerning Dr. Palazzo is certainly within Plaintiff's personal knowledge.

notes created an obvious gap in this ostensibly extensive medical record. *See Lowry v. Astrue*, 474 F. App'x 801, 804 (2d Cir. 2012) (summary order) (ALJ did not have duty to recontact treating physician for additional opinion evidence where ALJ obtained a "complete medical history" consisting of "extensive patient treatment records prepared by numerous healthcare providers"). Moreover, the Court is skeptical that remand for clarification would be a useful exercise: the crux of the ALJ's decision was that Plaintiff did not make credible reports to medical providers about the severity of her impairments. Plaintiff makes no argument that Dr. Palazzo's notes could have undermined that determination. *See Zabala*, 595 F.3d at 410. Accordingly, the Court is not convinced that the ALJ was obliged to recontact Dr. Palazzo to clarify his notes.

## CONCLUSION

For all of the reasons stated, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 12) is GRANTED, and Plaintiff's Motion for Judgment on the Pleadings (ECF No. 10) is DENIED. The complaint is DISMISSED WITH PREJUDICE, and the Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: March 17, 2021
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court